# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-0909V
UNPUBLISHED

| | |
|---|---|
| RACHELLE MEYERS,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: June 5, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA);<br>Bursitis |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for petitioner.*

*Robert Paul Coleman, III, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On June 26, 2018, Rachelle Meyers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered right shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 27, 2016. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons stated at the May 29, 2020 damages hearing and as set forth below, I find that Petitioner is entitled to an award of damages in the amount **$122,500.00**,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**all of which is for past pain and suffering** (as Petitioner requests no other damage components).

## I.      Relevant Procedural History

Several months after this case's initiation, on March 29, 2019, Respondent filed a status report stating that he was willing to engage in settlement discussions (ECF No 18). Thereafter, the parties attempted informal settlement for five months. On August 21, 2019, Petitioner filed a status report stating that the parties had reached an impasse and wished to resolve damages through briefing (ECF No. 26).

On October 29, 2019, Petitioner filed a damages brief requesting $140,000.00 in damages for pain and suffering (ECF No. 31). Respondent filed a responsive brief on December 3, 2019 proposing an award of $72,500.00 (ECF No. 32). On February 3, 2020, a telephonic status conference was held to discuss how the parties wished to proceed with respect to determining entitlement. Following the status conference, Respondent was directed to file a Rule 4(c) Report (ECF No. 33).

On February 18, 2020, Respondent filed a Rule 4(c) Report stating that Petitioner's injury was not consistent with a SIRVA as defined on the Vaccine Injury Table (ECF No. 34). However, Respondent conceded that Petitioner's bursitis was caused-in-fact by the October 27, 2016 flu vaccine, and thus agreed that Petitioner was entitled to compensation. On February 19, 2020, I issued a ruling finding that Petitioner was entitled to compensation for bursitis.

I subsequently informed the parties that this matter was appropriate for an expedited hearing and ruling based upon all evidence filed to date, including the parties' briefing (ECF No. 37). On March 4, 2020, the parties indicated in a joint status report they were amenable to an expedited hearing and ruling, and the case was scheduled to be heard on May 29, 2020. *See* Joint Status Report, filed Mar. 4, 2020, at *1 (ECF No. 38).

On May 29, 2020, I held the scheduled damages hearing in this case by telephone. Counsel for each party received the opportunity to present arguments in support of their position. At the conclusion of the hearing, I announced that I had determined that the award in this case would be $122,500.00. I informed the parties that a brief written decision would follow, summarizing my conclusions and oral decision.[3]

---

[3] Although the written transcript of the hearing has not yet been filed in this case, it is incorporated by reference herein.

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs., No* 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013), Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

In their damages briefs, and despite the fact that the case was not conceded as a Table SIRVA, the parties treat this case as a SIRVA case and cite SIRVA damages decisions. I agree that SIRVA damages decisions provide an appropriate framework for analyzing Petitioner's pain and suffering, since Petitioner's symptoms, course of treatment, and outcome are similar to those commonly found in SIRVA cases.

When performing the analysis necessary to render a decision on damages, I have reviewed the record as a whole, including the medical records and affidavits filed, plus all assertions made by the parties in written documents and at the May 29th expedited hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases.[5] However, I base my ultimate determination on the specific circumstances of this case.

---

[5] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

As the overall record establishes, Petitioner first sought treatment for her shoulder injury on December 2, 2016, approximately five weeks after receipt of the flu vaccine. Exs. 1 at 1, 2 at 4, 3 at 16. On this date, she was seen by both her primary care physician and an orthopedist, and reported shoulder pain that started immediately after her flu shot and limited her range of motion. Exs. 2 at 4, 3 at 16-20. The orthopedist ordered an MRI, which showed low grade partial tearing of the supraspinatus tendon[6] and a small amount of fluid in the subacromial and subdeltoid bursa. Ex. 3 at 14-15.

The following month, Petitioner returned to her orthopedist, reporting pain at a level of 10 on a scale of 1-10. Ex. 3 at 9. The orthopedist administered a steroid injection, which provided relief for three weeks. Ex. 3 at 6-9. A second steroid injection was administered on February 21, 2017. Ex. 3 at 8. Then, on May 12, 2017, Petitioner reported to another orthopedist for a second opinion. Ex. 4 at 3-5. The orthopedist recommended arthroscopic surgery, which was performed on June 6, 2017. Ex. 5 at 2-3. The surgery involved left shoulder arthroscopy, biceps tenodesis, debridement of the labrum, and subacromial decompression. Id. Ms. Meyers thereupon attended four physical therapy sessions in the two week period after surgery, reporting pain levels ranging from 2-7 on a scale of 1-10. Ex. 6 at 7-16. Petitioner's last treatment for her shoulder injury was a follow up appointment with her orthopedist on June 22, 2017, at which she was discharged from care. Ex. 2 at 8.

Petitioner maintains that during the time she was treating her shoulder injury, she was in constant pain. She asserts that the pain interfered with her care for her disabled adult child, who was subsequently placed in a group home.[7] She asserts that it also interfered with her ability to care for her infant foster son, sleep, and other daily activities. See generally Ex. 11. Petitioner's husband maintained that Petitioner's pain was unbearable, leading him to make late night trips to the pharmacy for transdermal lidocaine patches, and that Petitioner would whimper and cry during the night. See Ex. 12 at ¶ 7.

Setting an award for pain and suffering is more of an art than a science. There is no defined approach for determining the magnitude of damages, and there are many relevant factors and prior decisions that could counsel for a higher or lower award. In arriving at a number, I relied on my expertise and experience in the Vaccine Program, as well as prior reasoned decisions (which warrant greater weight than settled or proffered

[6] When Petitioner later underwent surgical intervention, no rotator cuff tear was identified. Ex. 5 at 3.

[7] Petitioner does not assert, or provide any evidence to suggest, that the decision to place her adult child in a group home was due to her shoulder injury. I find that her shoulder injury likely limited the care she could provide, but I do not find preponderant evidence that the group home placement was due solely to Petitioner's shoulder injury.

cases). Both parties presented good faith reasons for their requested award amounts. But when parties are unable to agree on a number, the special master is left to make the decision.

I find that awards issued *within* the Program are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other reasoned decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.

This case presents a large spread between the parties' proposed awards, larger than in other disputed cases I have recently resolved. After consideration of all relevant factors, I conclude that Respondent's position is too low. The record persuasively establishes that Petitioner complained of shoulder pain fairly soon after vaccination, and suffered months of unsuccessful treatment before undergoing surgical intervention. I acknowledge we are only dealing with eight months of records, which does not support a larger award for Petitioner. However, overall Petitioner's clinical course and treatment suggest an award closer to Petitioner's proposal is justified.

The decisions I find most persuasive in setting Petitioner's award are Dobbins, *Collado*, and *Knudson*.[8] *Selling,*[9] by contrast, is factually relevant but sets more of a floor than ceiling for what damages should be. In *Selling*, Special Master Oler distinguished between different types of surgical intervention.  *Selling*, 2019 WL 3425224, at *6. The surgical intervention in this case is more similar to that in *Dobbins*, *Collado*, and *Knudson* than *Selling.*

This is not, however, a case that warrants an award as high as *Dobbins* ($125,000.00 for pain and suffering). In *Dobbins*, Petitioner underwent significantly more physical therapy sessions than Petitioner in this case (although I do acknowledge Ms. Meyers' circumstances that prevented her from attending more). Overall, I find *Collado* to be the most persuasive as a comparable. I do understand Respondent's rationale for a lower number, but Respondent's proposal is much too low, even in light of *Selling.*

---

[8] The pain and suffering award in *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) was $125,000.00 for pain and suffering. In *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) the pain and suffering award was $120,000.00. In *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018), the pain and suffering award was $110,000.00.

[9] The pain and suffering award in *Selling v. Sec'y of Health & Human Servs.*, No. 16-0588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019) was $105,000.00.

Petitioner sought medical assistance right away, and underwent months of treatment before undergoing surgical intervention.

**IV.    Conclusion**

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $122,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering**.[10]

Accordingly, **I award Petitioner a lump sum payment of $122,500.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.